THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELIZA NUSBAUM, Plaintiff in Error.

*Opinion filed June 22, 1927—Rehearing denied October 7, 1927.*

1. CRIMINAL LAW—*what may be shown to establish conspiracy.* The existence of a conspiracy may be proved not only by direct evidence but also by inference from conduct, statements, documents and facts and circumstances which disclose a common design on the part of the accused persons and others to act together in pursuance of a common criminal purpose.

2. SAME—*what evidence is admissible where crime is shown to have been result of conspiracy.* Where the crime charged is shown to have been the result of a conspiracy, which is established by the evidence, it is proper to prove against any of the conspirators the relations of the parties and the object and purpose of the conspiracy, the act or declaration of anyone in furtherance of the common design, whatever tends to show the carrying out of the conspiracy, and all the steps by which the crime was brought about, including plans disclosed in the conversations of the conspirators tending to defeat, or at least to delay, the discovery of the crime.

3. SAME—*conspirators, as accessories, may be tried with and punished as principals.* Where a crime is the result of a conspiracy the proved conspirators are accessories to or actual participants in the crime, and, if accessories, are to be considered as principals and may be indicted and tried at the same time as the principals and punished accordingly.

4. SAME—*motion for separate trial should present all facts in support thereof to trial court.* The trial court passes on a motion

for a separate trial upon the grounds advanced in its support at the time it is made, and, except where the facts are not then known, the reviewing court will not reverse a judgment and require a separate trial where all the reasons therefor could have been advanced for the trial court's consideration.

5. SAME—*motion for a separate trial rests in discretion of the court—review.* Whether persons jointly indicted should be given separate trials rests largely in the discretion of the trial judge, there being no definite rule as to when separate trials should be granted upon such an indictment, and the denial of a motion for a separate trial will not be reviewed unless there has been a clear abuse of discretion.

6. SAME—*when reviewing court will not reverse conviction.* A reviewing court will not reverse a judgment of conviction on the ground that the evidence is insufficient to convict unless the verdict is palpably contrary to the weight of the evidence.

7. SAME—*record need not be entirely free from error.* The object of a review is not to determine whether the record is free from error but to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, after a trial in which no error prejudicial to defendant has occurred.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. EMANUEL ELLER, Judge, presiding.

ELMER J. SCHNACKENBERG, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and ROY D. JOHNSON, (EDWARD E. WILSON, CLARENCE E. NELSON, CHARLES E. MUELLER, and LOUIS E. GEIMAN, of counsel;) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

John Walton Winn, Eliza Nusbaum, Delila Martin, Marion Stringham and Edward Grant Goff were jointly indicted in the criminal court of Cook county for the murder of Albert Nusbaum. All the defendants pleaded not guilty, but later Delila Martin, Stringham and Goff entered pleas of guilty and testified for the prosecution on the trial of Winn and Mrs. Nusbaum. The jury found both of

these defendants guilty and fixed the punishment of Winn at death and of Mrs. Nusbaum at imprisonment in the penitentiary for life. Motions for a new trial and in arrest of judgment were made and denied. This court granted Winn a writ of error, and the judgment sentencing him to death was affirmed. (*People* v. *Winn,* 324 Ill. 428.) Mrs. Nusbaum prosecutes this writ of error to review the record of her conviction.

The facts concerning the murder are fully stated in *People* v. *Winn, supra,* and need not be repeated here. Eliza Nusbaum, the plaintiff in error, made a motion in writing, supported by affidavit, for a separate trial. After stating certain preliminary facts she set forth in her affidavit that Delila Martin, Stringham and Goff after their arrest made confessions to the police officers of the city of Chicago in which they admitted that they, in concert with Winn, murdered Albert Nusbaum, but that in these confessions they asserted that the plaintiff in error was neither present nor participated in the crime. The plaintiff in error further averred in her affidavit that she did not aid, abet or encourage the perpetration of the crime and had no knowledge of it until after it had been committed; that if tried jointly with the other defendants the confessions of Delila Martin, Stringham and Goff would be used against her; that the only evidence in the State's possession upon which it might possibly be contended that she was criminally liable was the statement said to be made in each of the confessions that she aided, abetted and encouraged the commission of the crime; that the jury's verdict would be prejudicial to her if at the same time the other defendants were tried on the question whether the crime had been committed as stated in the confessions; that to receive a fair trial and to defend on the issue whether she had aided, abetted or encouraged the perpetration of the crime a separate trial was necessary and should be granted her; that the confessions were competent as to the defendants making them because they

had been voluntarily made but that they were incompetent against the plaintiff in error in the absence of proper proof that they were acting in concert with her, and that this question could only be impartially determined in a separate trial. The motion for such a trial was denied, and the first contention of the plaintiff in error is that the court's ruling in this respect constitutes reversible error.

Both direct and circumstantial evidence was adduced upon the trial to establish the conspiracy to murder Albert Nusbaum. The existence of a conspiracy may be proved not only by direct evidence but also by inference from conduct, statements, documents and facts and circumstances which disclose a common design on the part of the accused persons and others to act together in pursuance of a common criminal purpose. (*People* v. *Looney*, 324 Ill. 375; *Tedford* v. *People*, 219 id. 23; *Spies* v. *People*, 122 id. 1.) When a conspiracy is established every act or declaration of any of the conspirators in furtherance of the common purpose is regarded as an act or declaration of each of them and may be proved against all. (*People* v. *Looney, supra.*) Whatever tends to show the carrying out of the conspiracy is relevant to the issue and is admissible. (*People* v. *Looney, supra;* 2 Wharton on Crim. Evidence,—10th ed.— sec. 698.) All the steps by which the crime was brought about, including every act of each of the conspirators in furtherance of the common purpose, may be shown. (*People* v. *Halpin*, 276 Ill. 363; *People* v. *Hedge*, 284 id. 513; *People* v. *Looney, supra; Spies* v. *People, supra.*) The proved conspirators are accessories to or actual participants in the crime, and, if accessories, shall be considered as principals and may be indicted and tried at the same time as the principals and punished accordingly. (Cahill's Stat. 1925, Crim. Code, secs. 2, 3, p. 906.) The evidence set forth in *People* v. *Winn, supra,* clearly shows that the murder of Nusbaum was the result of a conspiracy and that the plaintiff in error was one of the conspirators and active

in the consummation of the crime although not present when the murder was actually committed.

It is argued that the plaintiff in error feared Winn; that he was thereby enabled for years to extort money from her, and that in consequence their defenses were antagonistic and she should have had a separate trial. Neither in the motion for such a trial nor in the affidavit in support of that motion was there any suggestion that the plaintiff in error acted through fear or under duress and that she would defend on that ground. The trial court passes on a motion for a separate trial upon the grounds advanced in its support at the time it is made, and except where the facts are not then known the reviewing court will not reverse a judgment and require a separate trial where all the reasons therefor could have been advanced for the trial court's consideration.

But it is said that the plaintiff in error did not know at the time she made her motion for a separate trial that Winn's defense would implicate Goff as the actual perpetrator of the crime and involve the plaintiff in error as the cause of Goff's act. Winn's statement showing these facts was offered in evidence without objection. The statement could not have been seriously considered as harmful or its introduction in evidence would have been opposed. The plaintiff in error knew at the time her motion for a separate trial was made whether she would interpose as a defense that she acted through fear or under duress. In support of the motion no antagonistic defense was suggested other than that the plaintiff in error was not guilty of complicity in the murder. That contention is not borne out by the evidence.

The plaintiff in error insists that even though a conspiracy was shown it was one born of greed, and that instead of being one of the conspirators she would have followed her husband as the next victim of the conspiracy. While there was evidence that it was proposed that Goff should

rob Nusbaum and retain his money, that Mrs. Martin should get his automobile, and that the house owned by the plaintiff in error, in which Mrs. Martin lived, should be burned and Stringham and Goff divide the insurance money, yet robbery and arson were not the objects of the conspiracy. These crimes were proposed to conceal the real object of the conspiracy, viz., the murder of Nusbaum, and the money and automobile were to be apportioned among the conspirators named, for their participation in that crime. The evidence clearly shows that the plaintiff in error was involved in the plot to murder her husband in order that she might be free from him, and her affection for and relations with Winn show why she desired that end. Under the evidence she was an accessory, and by the statute it was proper to join her with the other defendants in the indictment and to try her as a principal. (*People* v. *Richie,* 317 Ill. 551; *People* v. *Powers,* 293 id. 600; *Burnett* v. *People,* 204 id. 208.) Whether persons jointly indicted should be given separate trials rests largely in the discretion of the trial judge. No definite rule can be laid down as to when separate trials should be granted upon such an indictment. The denial of a motion for a separate trial will not be reviewed unless there has been a clear abuse of discretion. (*Maton* v. *People,* 15 Ill. 536; *Johnson* v. *People,* 22 id. 314; *Spies* v. *People, supra,* p. 265; *Doyle* v. *People,* 147 id. 394; *People* v. *Gukouski,* 250 id. 231; *People* v. *Covitz,* 262 id. 514; *People* v. *Sobzcak,* 286 id. 157; *People* v. *Wood,* 306 id. 224.) No such abuse appears, and hence there was no error in denying the motion of the plaintiff in error for a separate trial.

On Monday, December 28, 1925, the day before the murder, Winn, who was then at the home of Mrs. Martin, sent her to the plaintiff in error with the request that she come to him. The plaintiff in error accompanied Mrs. Martin to the latter's home. When they arrived Winn arose, embraced the plaintiff in error and said, "My God, mamma!

How you fell away!" He took her on his lap, they caressed each other, and he said: "Well, mamma, something has got to be done; you know, mamma, you would be free years ago if you would listen to me and let me have the boys do it." She answered: "Well, I don't want you to do it; I don't want you to kill the old man, because I could never love you the way I do if you killed him; let the gang do it." They went into a room adjoining the kitchen, where they remained ten or fifteen minutes and after emerging from that room engaged in conversation. The plaintiff in error then left. After her departure Winn said to Mrs. Martin: "I know mamma wants the old man killed in her heart but she don't want me to do it, and the boys are sore; they will not do it because I have planned it so many times, and I will do it myself; it would not bother me to do that any more than it would to hit the stove." Objection was made to Winn's statement to Mrs. Martin after the plaintiff in error had left. Winn's inference that the plaintiff in error desired her husband's death was incompetent. The rest of the statement was condemnatory of Winn rather than of the plaintiff in error. While, as against her, the statement should have been excluded, it was not prejudicially erroneous.

Mrs. Martin testified to a statement by Winn on December 27 of his experiences in the penitentiary at Joliet. Goff testified that Winn said after the former's arrest, "You take the blame and you will get a life sentence and go down to Joliet and I will buy you out." These statements were made in the absence of the plaintiff in error and she objected to them. The first was irrelevant to any issue in the case, and the second was made after the conspiracy had terminated. So far as the plaintiff in error was concerned both should have been excluded, but it does not appear that either was prejudicial to her. *People* v. *Halpin, supra.*

The plaintiff in error objected to conversations concerning plans, one to make it appear that the murder occurred

during a robbery, and the other for the disposition of Nusbaum's body by burning the house in the attic of which the body was temporarily secreted. These plans, if consummated, would tend to defeat, or at least to delay, the discovery of the crime and were made in furtherance of the common purpose, and were therefore admissible. Objection was also made to other portions of the evidence on the ground that they were incompetent as against the plaintiff in error. Without specifying these items, it is sufficient to say that an examination discloses their competency because they tend to show the carrying out of the conspiracy to murder Nusbaum. When a crime is committed as the result of a conspiracy some latitude is permitted in the proof to show the relations of the parties and the object and purpose of the conspiracy. *People* v. *Billburg,* 314 Ill. 182.

It is further contended that the trial court erred in its refusal to give the jury the following instruction requested by the plaintiff in error:

"The court instructs the jury, before the defendant Eliza Nusbaum can be lawfully convicted of the crime charged in the indictment, it is incumbent on the prosecution to show beyond all reasonable doubt, by credible evidence, that the crime was committed by some persons or person acting under the advice, aid, encouragement, abetting or procurement of the defendant Eliza Nusbaum. Though the jury should believe from the evidence, that the defendant Eliza Nusbaum advised generally the commission, in certain contingencies, of acts amounting to crime, yet if the act complained of was in fact committed by some third party of his own mere volition, hatred, malice or ill-will, and not materially influenced, either directly or indirectly, by such advice of the defendant Eliza Nusbaum, or if the third party was actuated only by the advice of other parties not charged, and for whose advice the defendant Eliza Nusbaum was not responsible, then the defendant

Eliza Nusbaum would not in such case be responsible and should be acquitted."

The plaintiff in error, it is argued, was entitled to have two of the theories of her defense presented by this instruction. One of these theories was that Winn, in committing the murder, acted of his own volition, uninfluenced and undirected by the plaintiff in error, and the other was that Winn was advised and directed to commit the murder solely by Captain McCoy, an enemy of the decedent. With reference to the first of these theories, it may be said that the jury were instructed as to what constituted a conspiracy, and that they were told in at least three instructions given at the request of the plaintiff in error, that before she could be found guilty they must believe from the evidence, beyond a reasonable doubt, that she entered into the conspiracy, and that if, after taking all the evidence together, they could place upon it two constructions, one consistent with her guilt and the other with her innocence, it was their duty to place upon the evidence that construction which pointed to her innocence and to return a verdict of not guilty. The jury were further told that to establish a conspiracy as against the plaintiff in error it was not enough that she had a mere passive cognizance or knowledge of the unlawful action of other persons who were conspiring together to kill Nusbaum, but that before she could be convicted as a principal she must have participated actively in forming or carrying out the conspiracy. The second of these theories has little basis in the evidence. Winn told Mrs. Martin on the evening of December 27, 1925, that Eddie McCoy had brought to him at Crown Point, Indiana, a letter from Captain McCoy, Eddie's father, written by the father on his deathbed in Florida. In this letter, Winn said, Captain McCoy told him that he "should get rid of the old man and that he had everything fixed in Chicago; that there would nothing happen." Under the instructions that were given, the jury would understand that if they

believed from the evidence that Winn committed the mur-
der by the direction of Captain McCoy the acquittal of the
plaintiff in error would necessarily follow. Moreover, the
phrase "in certain contingencies," in the instruction, con-
veyed no certain meaning, and the instruction was objec-
tionable in that respect. The plaintiff in error was not,
therefore, deprived of a right by the refusal of the re-
quested instruction upon either of the two theories of her
defense.

It is also contended that the court erred in refusing to
give two other instructions requested by the plaintiff in
error. The first told the jury, in substance, that the plain-
tiff in error could not be convicted as an accessory before
the fact unless they were convinced beyond a reasonable
doubt that she by some affirmative conduct on her part en-
couraged, aided, abetted or advised the actual perpetrator
of the crime, and that to convict her as an accessory before
the fact it was not sufficient that she merely acquiesced in
an inactive way in the perpetration of the crime. The other
instruction attempted to point out a distinction between con-
senting to a crime and aiding, abetting or assisting in its
perpetration. Without setting forth these instructions at
length, it is sufficient to say that the law which was appli-
cable to the case was fully stated in other given instructions.
Thirty-nine instructions were given at the joint request of
the defendants and twenty-one of them mentioned the plain-
tiff in error by name. Taken all together they fairly cov-
ered the law on all the defenses interposed by the defend-
ants separately as well as jointly.

The evidence as set forth in *People v. Winn, supra,*
sufficiently answers the contentions of the plaintiff in error
that she was acting under duress and in fear of Winn and
that there is a reasonable doubt of her guilt. The jury de-
termined the questions of fact adversely to the plaintiff in
error. A reviewing court will not reverse a judgment of
conviction on the ground that the evidence is insufficient to

convict unless the verdict is palpably contrary to the weight of the evidence. (*People* v. *Hicketts,* 324 Ill. 170; *People* v. *Thompson,* 321 id. 594; *People* v. *Jarecki,* 291 id. 80.) The evidence clearly supports the verdict.

There is error in the record, but the object of a review is not to determine whether the record is free from error but to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, after a trial in which no error prejudicial to the defendant's rights has occurred. (*People* v. *Schueneman,* 320 Ill. 127.) The record in the instant case discloses no such error.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*