(No. 29363.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHESTER RUDNICKI, Plaintiff in Error.

*Opinion filed September 18, 1946.*

THADDEUS C. TOUDOR, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Chester Rudnicki, plaintiff in error, and Mike Valaskas and Walter Pelka were jointly indicted in the criminal court of Cook county for conspiracy. The indictment, consisting of one count, charged the defendants and divers other persons whose names were unknown to the grand jury with conspiracy to unlawfully obtain money, personal goods and merchandise from divers persons, firms, corporations, currency exchange operators and merchants, by means of the confidence game through the use of false and bogus checks purporting to be drawn by the Strand Manufacturing Company. The defendants pleaded not guilty and were tried by a jury. Valaskas was acquitted,

and Rudnicki and Pelka were found guilty as charged. The jury fixed their punishment at imprisonment in the penitentiary and a fine of $2000 each. Rudnicki, hereinafter called the defendant, sued out a writ of error from the Appellate Court for the First District, where the record of the circuit court was reviewed and the judgment affirmed. He has prosecuted a further writ of error from this court to review the proceedings.

It is contended by the defendant that the evidence is insufficient to support the verdict; that his conviction is based on the testimony of Donna Peay and Geraldine Hunter, confessed accomplices; and that their testimony is unworthy of credit and uncorroborated. Defendant further contends that the trial court unduly limited and restricted defendant in his cross-examination of these witnesses; that the court erred in the giving and refusing of instructions, and that the conduct of the trial judge and prosecuting attorney during the trial was prejudicial to the defendant and deprived him of a fair and impartial trial.

The evidence discloses the following facts: Donna Peay, a girl 19 years of age, and her friend, Geraldine Hunter, age 17, came to Chicago in July, 1943, from Miami, Florida, where they had been working as waitresses. They obtained employment in a Chicago night club and first met defendant Pelka there about August 1. After some conversation, Pelka asked the girls if they would like jobs with easier hours and more pay, and spoke to them of the "check racket." After several days consideration of the matter, the girls agreed to undertake the cashing of false and bogus checks, and did, on numerous occasions, over a period of two weeks in the month of September, cash many such checks. The girls were dressed to look like defense workers and the bogus checks they cashed were purported to be drawn on different manufacturing firms. Pelka furnished them with false identification cards bear-

ing their photographs and false social security cards, and introduced them to other girls who were also cashing checks. The defendant Rudnicki was an accountant, being employed as an auditor at the Bryson Hotel, with an office on the tenth floor, where he spent several days each week. He had known Pelka all his life. They were quite friendly, playing cards together about twice a week and betting on the horse races every afternoon. During the spring, summer and fall of 1943, Pelka lived part of the time at the Bryson Hotel and part of the time at the Eastview Hotel directly across the street. Rudnicki was the owner of a Hudson sedan which later was delivered by Pelka to Donna Peay for the use of herself and Miss Hunter in working the currency exchanges. Rudnicki signed the application requesting transfer of the 1943 license plates from this car to a Pontiac car he had purchased, stating therein that the Hudson car had been stored. Rudnicki was also acquainted with the girls, Donna and Geraldine, and had attended a party given by them at their apartment about September 25. Both Donna and Geraldine, together with four other girls, were arrested October 13 for passing bogus checks, and at the time of giving their testimony had been tried and convicted of the confidence game and their application for probation was then pending.

Donna Peay and Geraldine Hunter, called as witnesses for the People, both testified that on the afternoon of October 12 they drove with Pelka to the Bryson Hotel; that Pelka had in his possession a bundle of blank checks; that he told them he was going to the Bryson to have the checks typed; that they remained in the car while he entered the hotel; that he was gone a considerable length of time and when he returned told them that he could not get them typed because a party was going on and there were people around and that he was to pick up the checks at a filling station at seven o'clock; that they drove to the

filling station about that time where they met Rudnicki, who told Pelka that he did not get the checks typed because of the people being there, but that he would type them the first thing in the morning.

Two witnesses were called as experts who testified that People's exhibits A, B, C and D, being four of the bogus checks cashed, were filled in on the L. C. Smith typewriter used by Rudnicki in his office in the Bryson Hotel. These witnesses positively identified the checks as being written on that typewriter, and pointed out defects in the typewriting on the checks identical with the defects in specimens of typewriting written on the machine used by defendant at the Bryson. One of these witnesses had been in the service department of the L. C. Smith Typewriter Company for twenty-five years. The other was a professional expert, who had had years of study and experience in the examination and photography of questioned documents, and who had testified for the prosecution in the Lindberg kidnapping trial and in the Al Capone income tax case.

Defendant took the witness stand in his own behalf and positively denied ever making out any checks for Pelka or entering into a conspiracy to pass worthless checks. He admitted meeting Pelka and the girls at the filling station on October 12, but testified they just said "hello" and "how are you;" that Pelka asked defendant to lend him $10, and when defendant started to reach for his wallet to get the money, Pelka told him he was only joking, etc. Defendant testified he did not know that Geraldine Hunter and Donna Peay were passing worthless checks, and did not know that they ever had possession of his Hudson car; that he had sold the car to Mike DeMatteo for $75; that he never told anyone the Hudson was stored; and that he knew nothing about his application for transfer of license plates containing any such statements. Mike DeMatteo testified that he had nothing to do, either directly

or indirectly, with delivering the Hudson car to Donna Peay and Geraldine Hunter; that he did not buy the car from defendant and did not know who bought it.

Although much additional testimony was introduced by both the People and the defense, no useful purpose would be served by a more extended statement of the evidence. Defendant contends that his conviction is based upon the uncorroborated testimony of Geraldine Hunter and Donna Peay, confessed accomplices, and should be reversed. He admits that such evidence was competent and that conviction may, in a proper case, be sustained on the uncorroborated testimony of an accomplice, but argues that this is not such a case; that the testimony of the accomplices in this case is discredited and unworthy of belief, and that the situation here is similar to that in *People* v. *Elmore,* 318 Ill. 276, and *People* v. *Temple,* 295 Ill. 463, where this court reversed convictions based upon testimony of accomplices, which was undoubtedly given with the expectation or promise of leniency. In the *Elmore case* the accused was convicted of robbery upon the testimony of two accomplices and another witness, a hotel proprietor, who testified that he saw accused and the accomplices "splitting money" at his hotel the day after the robbery. In that case eight reputable witnesses testified to defendant's reputation as a peaceable and law-abiding citizen, and it was fully established by the testimony of six credible witnesses that he was not at or near the scene of the robbery. It was stated in the opinion reversing the case that the conviction was based solely on the testimony of the accomplices and the hotel proprietor; that the accomplices by their own testimony were conclusively shown to be conscienceless criminals, and that while the description of the hotel and what was going on there, given by the witnesses, was quite meager, it was enough to create an unfavorable impression of the place and of the proprietor. In the *Temple case* the only proof pertaining to the defendant's

guilt was the testimony of the accomplice, while there was much corroborating evidence in support of his denial thereof. The state of the evidence and the circumstances and situation in the case at bar differ widely from the *Elmore* and *Temple cases* cited.

This court has many times held that while the testimony of an accomplice is of doubtful integrity and must be received with suspicion and considered with caution, nevertheless a conviction may be based on such testimony, uncorroborated, if it is of such a character as to convince the jury beyond a reasonable doubt of the guilt of the accused. (*People* v. *Johnston,* 382 Ill. 233; *People* v. *Moran,* 378 Ill. 461; *People* v. *Dabbs,* 370 Ill. 378; *People* v. *Erickson,* 338 Ill. 542.) It is the province of the jury, in the first instance, to weigh the evidence and determine the facts. The jury in this case was adequately instructed on the subject of accomplice testimony and what it should consider in determining the value and weight of the same. It heard all the witnesses testify, saw them upon the stand, and, from their appearance, intelligence, candor and demeanor, had opportunities, not possessed by a court of review, for forming a correct estimate of the credibility of the witnesses and the veracity and weight of their testimony.

The evidence discloses the bogus cnecks were written on the L. C. Smith typewriter used by defendant at the Bryson Hotel; that his Hudson automobile was delivered by Pelka to the girls for use in their check-cashing activities, and in his application to the Secretary of State for a transfer of license plates from the Hudson to a new car he had purchased, it was stated that the Hudson was stored. These are facts and circumstances tending to corroborate the testimony of Geraldine Hunter and Donna Peay. The existence of a conspiracy may be proved not only by direct evidence but also by inference from conduct, statements, facts and circumstances which disclose a common design

on the part of the accused and others to act in pursuance of a common criminal purpose. (*People* v. *Borrelli,* 392 Ill. 481.) This court will not disturb a verdict of guilty on the ground that the evidence is not sufficient to convict unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify us in entertaining a reasonable doubt of the defendant's guilt. (*People* v. *Gibson,* 385 Ill. 371; *People* v. *Hicketts,* 324 Ill. 170.) We would not be warranted in this case in setting aside the verdict and judgment on the evidence.

We also find no merit to the further contention that defendant was unduly limited in the cross-examination of Geraldine Hunter and Donna Peay. They testified that in the latter part of September or the first of October they had spent a weekend in Detroit, where they had been invited to a dance. Defendant on cross-examination inquired by whom they were invited, whether by one man or two, the names and telephone numbers of the men they were visiting, and how long they had known the men, to all of which the court sustained objections. In support of his contention that the court erred in sustaining objection to these interrogatories, defendant argues that the entire life of a testifying accomplice becomes an open book, which may be inquired into upon cross-examination for the purpose of attacking the credibility of the witness. Conceding the right of defendant to inquire, upon cross-examination, concerning any matter which might tend to show a motive on the part of the witnesses, Donna and Geraldine, to testify falsely against him, the evidence sought to be elicited as to the details of their Detroit trip certainly would not tend to show such motive. The trial court also sustained an objection to the question as to the number of rooms occupied by Agnes Corcoran, a girl friend, who was also arrested for passing false or bogus checks. The question asked

was clearly immaterial and the objection thereto properly sustained.

It is also contended that the attitude and conduct of the trial judge and prosecuting attorney throughout the hearing were such as would naturally tend to prejudice the jury against defendant; and various instances of such alleged prejudicial misconduct were pointed out in defendant's brief. Written motions for a new trial and in arrest of judgment were filed in this case, in neither of which was this matter brought to the attention of the trial court or urged as grounds of error. Such alleged misconduct is therefore deemed waived and cannot be argued in this court. (*People* v. *Reck,* 392 Ill. 311; *People* v. *Jankowski,* 391 Ill. 298.) However, we have considered the numerous instances of alleged misconduct pointed out in defendant's brief in this connection, and in our opinion defendant was not prejudiced by any remark or statement of either the trial judge or prosecuting attorney or by the attitude or conduct of either of them. No one instance, nor the combination of them all, constitutes reversible error.

It is next contended that the court erred in giving and refusing certain instructions. Refused instruction 14, which defendant argues should have been given, informed the jury that the witnesses, Donna Peay and Geraldine Hunter, were accomplices, and dealt with the weight to be given the testimony of an accomplice. Given instructions 20 and 22 fully instructed the jury on the subject of the credibility of an accomplice and the weight and worth of his testimony. An instruction is properly refused if its substance is embodied in other instructions which are given. Defendant complains because the given instructions do not state that Donna Peay and Geraldine Hunter were accomplices, and says that given instruction 20, by use of the pronouns "himself" and "his" would naturally lead the jury to believe that it did not apply to the witnesses Donna

Peay and Geraldine Hunter. The terms "he," "his" and "himself" are commonly and frequently used to refer to any member of a class composed of males and females. It must be presumed that the jurors were persons of ordinary intelligence, and, if so, it is hardly possible that they could have received the impression that this instruction did not refer to the girls Donna and Geraldine. Furthermore, refused instruction 13, tendered by defendant upon the subject of accomplice testimony, uses the pronouns "himself" and "his," and omits entirely any use of the terms "she," "her" or "herself." A party cannot complain of an erroneous instruction where his own instruction is subject to the same criticism. *Spring Creek Drainage Dist.* v. *Greenawalt,* 335 Ill. 147.

Refused instructions Nos. 20 and 6 were cautionary instructions to the effect that the jury should consider the evidence as it affects each defendant separately and individually, and that the jurors should act only upon the evidence. It is within the discretion of the court to refuse a cautionary instruction where the jury, as is the case here, is otherwise properly instructed.

Refused instruction 18 on the subject of conspiracy was fully covered by given instructions 1, 2 and 3.

Given instructions 2, 3, 4, 6, 14 and 15 are objected to as not sufficiently emphasizing the requirement of proof beyond a reasonable doubt. The trial court gave to the jury thirty-two instructions, by which it was fully and fairly advised of the law applicable to every phase of the case. It was told therein that the instructions given were to be considered as one series and each instruction considered in connection with all instructions bearing on the same subject. The instructions also defined the crime of conspiracy with which defendant was charged and informed the jury of all the elements thereof and the proof necessary in order to establish guilt. Instructions 8, 10, 11, 12, 13, 16, 23 and 30 charged the jury that it must

believe from the evidence, beyond a reasonable doubt, that the defendant was guilty of the crime charged before it could convict. There is no basis for the contention that any of the instructions complained of, when considered with the other instructions as a series, fail to fully and fairly announce the law.

It is further contended that instruction No. 2 assumes the guilt of defendant. This instruction defines what is necessary to constitute a conspiracy and states when the fact that each of several defendants acted illegally or maliciously with the same end in view does not constitute a conspiracy, but it assumes neither the guilt of defendant nor any illegal or malicious action on the part of any defendant in the case.

Instruction No. 3 further deals with the proof necessary in order to establish a conspiracy among two or more parties. It states when and under what circumstances such parties may be regarded as having formed a conspiracy and "are all alike guilty." The criticism made is that this instruction told the jury that all the defendants were guilty alike, and thus deprived defendant of. an unbiased consideration by the jury of the question of just punishment. While the word "alike" might properly have been omitted, its use does not render the instruction subject to the construction which defendant places upon it. An instruction under which two or more persons might be found "all alike guilty" is not equivalent to an instruction that such persons must all receive the same punishment. The instruction makes no reference to punishment, and when read in the light of instruction No. 32, which informed the jury of the various degrees of punishment which might in its discretion be meted out to the various defendants, could not deprive defendant of the jury's unbiased consideration of the question of just punishment.

Instruction No. 4 objected to was held by this court in the case of *People* v. *Moran,* 378 Ill. 461, at pages 469 and

470 of the opinion, to be a correct statement of the law and properly given in a conspiracy case. Instruction No. 6 in this case is also objected to by defendant, but a similar instruction was approved by this court in the case of *People* v. *Konkowski*, 378 Ill. 616, at page 625 of the opinion.

A careful consideration of the record convinces us that defendant has had a fair and impartial trial and that no error appears in the record which would reasonably affect the result. The judgment of the Appellate Court is, therefore, affirmed.

*Judgment affirmed.*