People of the State of Illinois, Plaintiff-Appellee, v. Thomas Savage and William Puckley (Impleaded), Defendants-Appellants.

Gen. Nos. 50,579 and 50,581.

First District, First Division.

May 22, 1967.

George J. Cotsirilos, of Chicago, for appellant, Thomas Savage.

Alfred E. Barr, of Chicago, for appellant, William Puckley.

■■■■■■■■■

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John L. Conlon, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Defendants, Thomas Savage and William Puckley, were jointly indicted in three counts for violation of the Uniform Narcotic Drug Act. The first count charged them with possession of narcotics, the second with dispensing a narcotic drug and the third with conspiring to sell narcotics. The defendants were tried jointly and the jury found them both guilty on all three counts of the indictment.

Defendant Thomas Savage was sentenced to 9 to 10 years for possession (Count 1), 20 years to life for dispensing (Count 2) and 4 to 5 years for conspiring to sell (Count 3), all sentences to run concurrently.

Defendant William Puckley was sentenced to 7 to 10 years for possession (Count 1), 10 years to life for dispensing (Count 2), and 4 to 5 years for conspiring to sell (Count 3), all sentences to run concurrently.

On motion of the defendants, this cause has been consolidated on appeal, the transaction out of which the indictment arose, the trial and the basic issues of law and fact being the same.

The State's case consisted of two witnesses. One was a police chemist who testified that certain pills delivered to him were chemically tested and found to be morphine sulphate, a narcotic drug. There were also 2,200 red pills which were nonnarcotic. The main witness was police officer, Harold Johnson, a vice detective.

The facts as revealed by Officer Johnson's testimony are that on February 3, 1965, he received a telephone call from a person he described as a reliable informer. Two days later the informer called again and after talk-

ing for a few minutes put a man who identified himself as "Bill" on the telephone. "Bill" said he was interested in "someone who wanted to get some pieces to deal around the high school area." "Bill" also said, "I have $1,500.00 with me now, but if you want more, take this and try it, and I will get in touch with you tonight and bring as much as you want." Officer Johnson said he did not have that much money but said he would get it.

The officer then told his informer to have "Bill" call the Roberts Motel and ask for Willie Johnson. The officer called ahead to get a room at the motel and proceeded there. Johnson made the room appear as if he had been living there for some time. The motel clerk was instructed that if two white men came looking for Willie Johnson, they were to be directed to his room.

Officer Johnson waited for more than an hour. The two defendants arrived at the motel and after talking to the desk clerk came to his room. Johnson opened the door and Puckley said, "I am the fellow who called you, Bill." The defendants went into the motel room. Defendant Savage told Johnson that they "were looking for someone to deal in the high school area." The conversation continued and Johnson told the defendants he was interested in purchasing narcotics from them.

Puckley then told Savage "(G)o ahead, pick up the stuff." Savage left and Puckley told Johnson he had "more stuff that my partner doesn't know anything about." He offered to deal with Johnson on the side and also to get stolen clothing for him in his size.

About one hour after Savage left, the telephone rang. It was Savage and he asked to "speak to Bill." About 20 minutes later, Savage entered the room carrying a plastic bag wrapped around a brown bag. He placed it on the bed and said: "Here is your stuff."

Puckley and Savage opened the bag and dumped the contents on the bed. There were a large number of red pills, which were later discovered to be nonnarcotic.

There was also a bottle of white pills. The bottle was emptied onto the dresser, the pills counted, replaced in the bottle and then the bottle was set down on the dresser. Officer Johnson deliberately knocked the bottle off the dresser, spilling the pills. Savage said that the pills were worth $6,000 and "we are giving you a break to get everything set up in the schools." Savage and Puckley bent down to pick up the pills. At this point Johnson removed his revolver from under the mattress where he had hid it, and showing his badge to the defendants, placed them under arrest.

Defendant Savage testified on his own behalf. He denied having any knowledge of the narcotics, but admitted knowing about the red pills which were barbiturates. He went to the motel with Puckley who said they were supposed to meet a woman there. The motel clerk directed them to Johnson's room and Johnson told them the "woman" was his common-law wife, but she was out at the moment. The men engaged in conversation for a while including stolen clothes and narcotics. Johnson asked "if we could get hold of any narcotics . . . and I said, 'sure,' we could probably get hold of some." Savage left the room and said he "was going to see about getting some pills, barbiturates." He went to the Englewood Station where he removed a leather coat from a safe-deposit box. The key was given to him by Puckley, but Savage denied knowledge of the fact that barbiturate pills were in the coat. He was, however, aware that they had the pills. "We had them with us for about a week."

After going shopping and purchasing some new clothes, Savage called the motel. Puckley told him to come over which he did. Upon arrival he dropped a package of his old clothes on the bed and was then placed under arrest. He denied ever seeing the white pills, the narcotics, before the day of the trial.

Defendant Puckley also admitted possession of the red barbiturate pills, but denied ever having possession of the

narcotics. Puckley's story was that they went to the motel to sell the barbiturates to a woman. They were directed to Johnson's room. During the ensuing conversation Johnson asked if they had any cocaine. Although Puckley admitted knowing someone who had some cocaine, he told Johnson he could not get any. Puckley then sent Savage to the train station to get the barbiturates. When he returned, they were immediately placed under arrest.

The defendants argue that the evidence was insufficient to sustain the conviction under Count 2 of the indictment, unlawfully dispensing a narcotic drug. They both argue that no money was exchanged, Officer Johnson admitted that he never physically controlled the pills and the defendants' testimony was that they were arrested immediately upon Savage's return to the motel room with a package.

■ "Dispensing" is defined by the Statute as including "distribute, leave with, give away, dispose of, or deliver." C 38, § 22–2(o), Ill Rev Stats (1963). Thus an exchange of money is not required to sustain a conviction for dispensing. People v. Greer, 20 Ill2d 370, 169 NE2d 750 (1960).

■ Although both defendants claimed they were arrested immediately upon Savage's return to the motel, the testimony of Officer Johnson was that defendants engaged in counting the pills, set them down on the dresser and walked away before they were arrested. This testimony in addition to the statement by Savage, "Here is your stuff", is sufficient, if believed, to show a "dispensing" of the narcotics to Johnson.

No question is raised as to the sufficiency of the facts to show possession of and conspiracy to sell narcotics. However, we do not believe that the defendants were afforded a fair trial.

The defendants raised several issues concerning the conduct of the prosecutor during the trial which were prejudicial to them. During the voir dire the Assistant State's Attorney accused defense counsel of trying to prevent the State from getting a fair trial. In the opening statement, defense counsel was accused of employing tactics designed to confuse the jury. This accusation was made again in the prosecutor's closing argument.

Both defendants testified on their own behalf. In cross-examining them, the prosecutor asked if they had not told Officer Johnson that they lived at an address different than the address they had testified to as their residence. The prosecutor, obtaining a negative response, then asked if it was not a fact that they had changed their addresses because narcotics were found at the address they allegedly gave to the officer. The prosecutor said he was laying a foundation, but his accusation of another crime for which defendants were not on trial was never connected up. Defendant Puckley was also cross-examined about the fact that he was living with a woman who was not his wife.

The final incident complained of, occurred during the final argument. The prosecutor in commenting on why no witnesses were brought in to corroborate the officer's testimony stated: "(W)hy didn't the clerk from the motel come in(?) I will tell you why, she is scared of getting killed. . . . (H)e (the informer) is in a worse position than the clerk. . . . because if the clerk came in and testified and she would live a day, the informer wouldn't make it out the door."

Defendants' objection to his line of argument was overruled.

A defendant, guilty or innocent is entitled to a fair trial. People v. Galloway, 7 Ill2d 527, 131 NE2d 474 (1956). The comments by the prosecutor reflecting on the role of the defense counsel were improper. People

v. Freedman, 4 Ill2d 414, 123 NE2d 317 (1954). Equally improper were the prosecutor's accusations that the defendants were guilty of possession of narcotics different from that charged in the indictment and that they would kill any witnesses who testified against them. These comments were designed solely to arouse the prejudices of the jury without throwing any light upon the question of defendants' guilt and a new trial will be required. People v. Bimbo, 314 Ill 449, 145 NE 651 (1924) ; People v. Deal, 357 Ill 634, 192 NE 649 (1934).

██ We consider it appropriate to discuss only one additional assignment of error since it concerns a matter which might arise on a retrial of this case. The trial judge permitted into evidence Officer Johnson's testimony as to his conversation with a man identified only as "Bill." At the subsequent meeting at the motel, defendant Puckley admitted being the person to whom the officer had spoken to on the telephone. As to Puckley, there was no error in the admission of the testimony.

██ ██ As to the defendant Savage, the conversation was also admissible. At the motel, Savage and Officer Johnson had a conversation substantially the same as the telephone conversation with "Bill." One count of the indictment was for conspiracy to sell narcotics. It is permissible to prove a conspiracy by showing the common actions of the two defendants. People v. Nusbaum, 326 Ill 518, 158 NE 142 (1927).

The judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

MURPHY, P. J. and BURMAN, J., concur.