People of the State of Illinois, Appellee, v. George Varnadoe, Appellant.

Gen. No. 49,714.

First District, Fourth Division.
December 31, 1964.
Rehearing denied January 20, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (John J. McDonnell and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

In this case the defendant was tried in the Criminal Division of the Circuit Court of Cook County on an indictment charging him with the unlawful possession of narcotic drugs. He pleaded not guilty and after a bench trial was convicted and sentenced to the Illinois State Penitentiary for a minimum period of two years and a maximum of three years. From that judgment this appeal is taken.

When called for trial the defendant entered a plea of not guilty and, through his attorney, made a motion to suppress certain evidence which had been seized by the police in a search of defendant's person. The court heard evidence on the motion, and from the record it appears that the arresting officer went to an apartment house at 4015 South Ellis Avenue, Chicago, Illinois, on November 11, 1963. He had received an anonymous telephone call informing him that narcotics were being sold and used in a second-floor apartment in that building. He and his partners went to the building and talked to a woman who said she was the housekeeper and who told them that the girl who occupied a room on the second floor was in jail. She gave the police permission to check the room. The arresting officer, accompanied by his partners, went to the room, knocked on the door, which was opened by one Thomas Perry. When the door was opened the officer saw a hypodermic needle lying on a rug on the floor. He then entered the apartment and stooped to pick up the needle, whereupon the defendant pushed him. The officer arose from his crouching position and saw the defendant

444

put his hands into his pants pocket. A struggle then ensued in which the arresting officer put his hand into the front pocket of the defendant's pants and brought out a tinfoil package containing a white powder. [It was stipulated at the trial that the tinfoil package contained heroin.]

In the hearing the defendant testified that he was visiting a girl friend in the apartment in question and that she shared the apartment with another girl; that at the time the police entered the room they announced they were police officers and that nobody had invited them to enter the room. He stated that he did not enter into any struggle with the officer, but that he was an addict.

The officer testified that when the door was opened he saw a hypodermic needle lying on the rug about 3 feet inside the door of the room. He saw four adults in the room and a baby lying in a basket on the floor. He also observed a television in the middle of the room which had a glass of water on it in which were red stains and a red-stained handkerchief was lying beside it.

The court denied the motion to suppress and it was stipulated that the testimony heard on the motion to suppress would be the same as in the trial, and there was a further stipulation with reference to the tinfoil package containing heroin which had been recovered from the defendant. The court found the defendant guilty and gave him a sentence of a minimum of two years and a maximum of three years. From that judgment this appeal is taken.

The defendant argues in this court that the trial court erred in denying the defendant's motion to suppress the evidence. He argues in support of this point that the girl who shared the apartment had invited him into the apartment as her guest and that consequently he had standing to object to illegally ob-

tained evidence. Citing Jones v. United States, 362 US 257.

The possession of a hypodermic syringe, except by physicians and other designated persons, is prohibited by statute [Ill Rev Stats 1961, c 38, §§ 22–50]. The defendant incorrectly asserts that the only issue in the instant case is whether the record reflects that the defendant had "standing" to object to the unwarranted invasion of the apartment, and contends that the policeman's knock on the door violated the Fourth Amendment. It has been held that where an officer is in portions of a building or property which is used commonly by tenants or their guests, the officer is not within an area protected by the Fourth Amendment. In City of Evanston v. Hopkins, 330 Ill App 337, 71 NE2d 209, the officers entered a building through a front door which had upon it a sign reading "Public Telephone." Upon their entry they saw conduct which indicated that the place was a house of ill repute. The court held in that case that the protection against unreasonable searches and seizures extended to a person's dwelling and the curtilage of the dwelling but did not extend to open areas commonly used in a building or other places not within the curtilage. Therefore, the officers, being in the hallway or on the stairs, violated none of the defendant's constitutional protections. No substantial constitutional question is involved. Also see United States v. Minker, 312 F2d 632 (1962).

In Polk v. United States, 314 F2d 837 (1963), the court held that the police officers had made their observation which led to the arrest from a proper place without an unreasonable invasion of defendant's privacy. In that case the defendant failed to answer the front door; the officers walked through a passageway, pushed past an unlatched gate standing ajar, and climbed on an outside stairway, all of

which were for the common use of residents; and from that position saw criminal actions sufficient to justify an arrest. The court also held that areas open for use by tradesmen or other persons for a legitimate business with any of the residents cannot be asserted as being privileged within the protection of one's own living quarters. It was also so held in United States v. Lewis, 227 F Supp 433 (1964).

■ In the case before us the door was opened immediately upon the knock of the officer. Before the opening of the door the officer did not indicate that he was a police officer, nor did he use any force in gaining admittance. After the door was opened and before he entered the apartment he saw the hypodermic syringe lying on the floor. At that time, a crime having been committed in the presence of the officer, he had a right to make an arrest.

When a lawful arrest is effected, a peace officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of protecting the officer from attack, preventing the person from escaping, discovering the fruits of the crime, or discovering any instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, an offense.* People v. Watkins, 19 Ill2d 11, 166 NE 2d 433; Weeks v. United States, 232 US 383; United States v. Rabinowitz, 339 US 56.

All the adults in the apartment were in constructive possession of the hypodermic syringe and would be subject to immediate arrest and a reasonable search. Under those circumstances, no search warrant is required. Section 4 of Division VI of the Criminal Code (Ill Rev Stats 1957, c 38, § 657) pro-

---

* This rule, established by case law, has now been embodied in the Illinois Code of Criminal Procedure. Ill Rev Stats 1963, c 38, § 108–1.

vides that an arrest may be made by an officer without a warrant for a criminal offense committed in his presence, or where a criminal offense has in fact been committed, and he had reasonable grounds for believing that the person arrested committed it. In City of Evanston v. Hopkins, supra, the court said that the police officers "having gained entrance lawfully, . . . were authorized to take advantage and set upon whatever they heard or saw in the premises."

In People v. Phillips, 30 Ill2d 158, 195 NE2d 717, a police officer testified that an informer had told him he had purchased narcotics from the defendant and that he had heard arrangements being made for a delivery of narcotics to the defendant's apartment. The police officer went to the apartment and knocked on the door which was opened by the defendant. At that time the officer showed him his star. Two people were lying on the bed, one of whom threw a hypodermic syringe on the floor. The police officer immediately entered, with his partner, and picked up the syringe. His partner picked up a cigarette package the defendant had dropped, which contained tinfoil packets of heroin. The defendant, as in the case before us, made a motion to suppress, which was denied, and alleged that the heroin was the product of an illegal search. The court said:

". . . We do not so appraise the record. The testimony of the police officer was that there was no entry into the defendant's apartment until after the officer had seen the hypodermic needle and syringe. Possession of those articles, except by physicians and other designated persons, is prohibited by statute. (Ill Rev Stats 1961, c 38, § 22–50.) Apart from anything that had theretofore occurred, the officer had personal knowledge that an offense was being committed in his presence at the time that he entered the

448

■■■■■■■■■■■■■■■

apartment. This appears to have been the view of the trial judge, who stated that in his opinion there had not been an unlawful entry. No search was necessary to discover the needle and syringe, which were in plain view. The subsequent seizure and opening of the cigarette package which contained the heroin was incidental to a valid arrest, and the motion to suppress was properly denied."

■ The search involved in the instant case would be justified under the rule laid down in the Phillips case. Nevertheless, in the case before us there is an even stronger set of facts in justification of the search by the police officer. While he was stooping to pick up the syringe from the floor he observed the defendant put his hand in his trouser pocket. The normal apprehension would be that the defendant was reaching for a weapon. Applying both the law and common sense to the action of the policeman, he was fully justified in searching the pocket of the defendant. See People v. Watkins, supra.

The court committed no error in overruling the motion to suppress the evidence. The evidence established defendant's guilt beyond a reasonable doubt.

The judgment of the Circuit Court of Cook County, Criminal Division, is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.