People of the State of Illinois, Plaintiff-Appellee, v. Robert Lee Howard, Defendant-Appellant.

Gen. No. 52,306.

First District, First Division.

June 23, 1969.

 

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant was found guilty of robbery. He was sentenced to the penitentiary for 2½ to 5 years. On appeal defendant contends (1) that he was not proved guilty beyond a reasonable doubt, and (2) that the prosecutor's final argument to the jury was prejudicial and deprived defendant of a fair trial.

On October 15, 1966, at about 8:30 p. m., Charles Ross, the complaining witness, was on his way to a friend's tavern at 63rd and Dorchester, Chicago, Illinois. He saw three men in a dimly lit vestibule and crossed over to the other side of the street. He heard footsteps behind him and turned around in the middle of the block and a man, identified by Ross in court as defendant Robert

Lee Howard, came up to Ross and grabbed his sweater. The man, with his hand in his pocket, demanded money. Ross gave the man approximately $20. As this was happening the other two men whom Ross had noticed in the vestibule came over. One of the men made a gesture as though he was going to strike Ross and said, "Give him your wallet." Ross gave the first man (the defendant) the wallet. It contained identification data, and it was returned to him. The three men then ran back in the direction from which they came.

Ross proceeded to the tavern, where he ordered a beer and stood by a window. He saw a police car and went out and stopped it. Ross testified he told the police about the robbery, and "I gave them the description that the man was wearing a western leather jacket with fringes, front fringes, rear fringes, at the bottom, an Italian button down sweater, green tinted lens shades, and the man wore a process, had light colored trousers and black shoes, approximately five feet nine." He gave no facial description.

Ross returned to the tavern and about an hour later the police returned with a young man in the squad car. Ross examined the man and his clothing and stated it was not the man who had robbed him.

Ross stayed in the tavern, looking out of the window, until about one o'clock in the morning, when he noticed defendant crossing the street. He recognized the jacket and followed defendant three or four yards, and when Ross "was sure that he was the man," he pointed defendant out to two policemen in the area, who then arrested Howard. The arresting police officers were not the officers Ross had seen previously.

Ross was cross-examined at length about his identification of defendant, and his testimony included, "I know this man is Howard because the case has been continued for about six months, I should know him by now. Within six months I should have seen him enough

times to know him when I see him again. The first time I seen him that was my first time seeing the man. When I pointed him out in court today, that wasn't the first time I saw him. I saw him in court the number of times that it has been continued. I have had a good chance to look at him each time. I remember him from the night he robbed me. That's the night I remember his face from. I hadn't paid that much attention to the man in court. I didn't look at him that carefully in court. I saw enough of him that particular night." He further stated, "After I was sure it was the man that robbed me, I saw the policemen, they were walking their beat, I stopped them. . . . When I saw this man from the front I was certain, but I wanted to make sure, when I just saw the man's face. He had the same dress. The tinted lens, the process, the jacket, but I wanted to make sure, more or less, . . . . After the three yards I stopped and reported to the cops. I explained to them what was happening and I went up and pointed the man out. These policemen were walking in the area that this boy was." The policemen were in uniform, and when the policemen stopped defendant Ross said, "That's the man that robbed me." He further stated, "When they stopped Mr. Howard on the street he made a statement that he wasn't the one, but he knew who had the money. He never said that he did it. He just said that he knew who did it."

Marshall Harris, a police officer, testified that on October 16, 1966, he was on duty at approximately 12:30, checking taverns between 63rd and Dorchester and 63rd and Kenwood. He was on foot with his partner, Charles Harrison. He saw Ross and had a conversation with him, and following the conversation he placed defendant under arrest. His testimony included, "I recall what he was wearing at the time. He had a leather jacket, a sort of like a cowboy type with a fringe up the sleeve and around the bottom and across the back. There were also

fringes on the back. He had fringes on the front of the jacket, across the chest. He did not have a hat. He had glasses on. They were tinted sunglasses. His hair was what is commonly known as a process. It had been slicked down and straightened."

On cross-examination he stated he was told by Ross that he had reported the robbery earlier, but he did not know whether it had been reported or not, and he did not see any report of the occurrence by any other policeman. He further said there were two men with Howard on 63rd Street, and Ross did not identify either of the two men but he did identify Howard.

On redirect the officer said, "We had a conversation with Mr. Howard on 63rd Street. Present were Mr. Howard, Mr. Ross and my partner. I explained to him why I was placing him under arrest. I told him he was under arrest because Mr. Ross had identified him as the man who had just held him up. Mr. Howard said he didn't know anything about it, and that he had just come out at the time."

No evidence was offered on behalf of defendant.

Initially considered is defendant's contention that he was not proved guilty of the crime of robbery beyond a reasonable doubt. Defendant asserts that Ross did not adequately view the face of the robber, and his identification testimony was based solely on the clothes worn by the man who had taken his money. Defendant argues that throughout the trial it was evident that Ross "was preoccupied with clothes to such an extent that rendered his identification of the defendant, as a perpetrator of the crime, questionable."

Defendant also points out that Ross was able to describe the dress of the other two men, but his description was "totally devoid of any specific physical characteristic of these men. This is clearly brought out where the complainant is unable to state whether or not these men had a mustache."

171

Defendant's authorities include People v. Kincy, 72 Ill App2d 419, 219 NE2d 662 (1966), where the court reversed a single witness identification because the complaining witness identified the defendant only because of his jacket. There the court said (p 427):

> "Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed."

Defendant also cites People v. Jones, 24 Ill2d 71, 179 NE2d 620 (1962), where it is said (p 74):

> "The defendant argues that the identification of the defendant was based only upon the fact that he was wearing a light colored jacket and argues that this type of evidence is insufficient to establish defendant's guilt beyond a reasonable doubt. The identification by Young is subject to this criticism and if his testimony were the only identification testimony in the record, we would not hesitate to reverse the judgment of conviction. However, even if his testimony is disregarded, there remains the positive testimony of the complaining witness that she clearly saw the defendant's face at close range and that she recognized him by the freckles on his face, as well as by his clothing."

Defendant also contends that complainant's conduct subsequent to the alleged robbery was not consistent with one who had just been robbed, and "it seems highly unusual for one in the complainant's position that moments after he had been robbed to enter a friend's tavern, order a beer and then ten or fifteen minutes later inform the police of the crime. One who was robbed as the complainant described would have immediately telephoned the authorities."

172

The State notes that Ross was face to face with the defendant for nearly three minutes at the scene of the robbery and later outside of the tavern. The State argues that the failure of Ross to describe defendant's facial characteristics in detail did not render the identification less credible because in People v. Miller, 30 Ill2d 110, 113, 195 NE2d 694 (1964), it is said:

"Precise accuracy in describing facial characteristics is unnecessary where an identification is positive."

The authorities of the State include People v. Williamson, 78 Ill App2d 90, 95, 223 NE2d 453 (1966):

"The witness saw the robber and identified the defendant. The observation is the basis of his identification, and the specific characteristics contained in the testimony do not embrace the totality of the visual observation. Witnesses cannot be expected to testify to all the details which form the basis of their identification, but this does not make their testimony a conclusion or opinion in any legal sense. It is still testimony based on observation."

In sum, we find the identification evidence was sufficient to support defendant's conviction beyond a reasonable doubt. A determination of guilt by a jury will not be set aside by a reviewing court unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to cause a reasonable doubt of guilt. (People v. Tribbett, 41 Ill2d 267, 272, 242 NE2d 249 (1968).) The in-court identification by Ross of the defendant as his assailant on October 15, 1966, was positive and unshaken on cross-examination. The competence and credibility of Ross, his conduct after the robbery and his description of the defendant were matters for the determination of the jury, and they believed Ross. The testimony of one witness alone, if it is positive

173

and the witness is credible, is sufficient to convict. 30 Ill2d 110, 113.

Next considered is defendant's contention that the final argument of the prosecutor to the jury deprived the defendant of a fair trial. The record shows that the prosecutor in his closing argument to the jury stated, "now I don't know in rebuttal or in response to this what Mr. Bloom will say, I am not clairvoyant, but I strongly suspect that he will try to lead you down the garden path, as it were, and confuse you and take your mind and your eye off the main channel. Don't be fooled." Defendant contends the foregoing argument destroyed any chance of defendant's final argument being favorably received by the jury. Defendant's authorities include People v. Savage, 84 Ill App2d 73, 228 NE2d 215 (1967), where this court reversed and remanded defendant's narcotic conviction because of the statements of the prosecutor in his opening and closing argument to the effect that the defense counsel was employing tactics to confuse the jury. Defendant cites People v. Romero, 36 Ill2d 315, 223 NE2d 121 (1967), where the court said (p 320):

> "[W]e have often held, both in civil and criminal cases, that if 'prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved in the trial court.' "

■■ Remarks by a prosecutor reflecting on the role of the defense counsel are improper and tend to deprive the accused of a fair trial and should not be permitted. (People v. Freedman, 4 Ill2d 414, 422, 123 NE2d 317 (1954).) However, in our opinion the improper remarks here were of such a character that prejudice

to the defendant was not the probable result, and the verdict should not be disturbed. People v. Berry, 18 Ill 2d 453, 458, 165 NE2d 257 (1960).

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.