**People of the State of Illinois, Plaintiff-Appellee, v. Levi Wright and Woodrow Ward, Defendants-Appellants.**

Gen. Nos. 52,541, 52,951. (Consolidated.)

First District, Fourth Division.

May 27, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (John E. Hughes and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Oliver D. Ferguson, and James R. Kavanaugh, Assistant State's Attorneys, of counsel), for appellees.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

This is a consolidated appeal. Defendants and a Lonnie Lowe were jointly indicted for armed robbery. After a bench trial, they were convicted and the court sentenced each to serve ten to fifteen years. For reversal of these convictions, defendants contend that (1) the suggestive nature of the pretrial identification to which they were subjected resulted in a courtroom identification that denied them a fair trial; (2) their identification by the complaining witness was so unsatisfactory that they were not proven guilty beyond a reasonable doubt. Addition-

ally, the defendant Wright contends that because his alibi evidence was uncontradicted, and because the identification evidence was the testimony of only one witness, the alibi could not be discounted and he could not be found guilty.

April 2, 1966, at approximately 8:30 in the evening, Mrs. Jacqueline Scott "[w]as coming from the launderette on . . . Pulaski at Washington" to her home at 3820 West Washington Boulevard in Chicago. As she walked east on Washington Boulevard, Mrs. Scott saw three men following her. When she reached the door of her building, one of the men passed her, the other two stopped in a building two doors away. While Mrs. Scott was trying to open the door, the man she identified as the defendant Wright asked her whether that address was "1820." Mrs. Scott told him it was not. She asked Wright if he was looking for anyone in the building. At the same time Mrs. Scott rang the doorbell to her landlord's apartment. As she did, "Levi Wright stepped up on the step behind me and put something around my neck. It felt like a knife." She said, "I knew he took something out, the light flashed on it." According to Mrs. Scott, "He told me, 'Don't scream,' . . . ." Then "[a]t that time Ward (the other defendant) was putting his hand in my pocket, taking things out." Mrs. Scott said she had some change and some papers in her pocket. The change "[i]t wasn't very much, around 15 cents . . . ." Just as her pocket was gone into, Mrs. Scott's landlord opened the door. The men "[l]ooked up and saw him and they turned around and walked towards Hamlin . . . ."

Mrs. Scott testified that it was not raining the evening of April 2; that the area in front of her building was illuminated by lights from the Garfield Park Hospital across the street, from streetlights and the lights in the hallway. There was a shadow under a window. She was

able to see the three men who accosted her. Mrs. Scott said she went into her home and called the police. In less than ten minutes, policemen came. She gave the police a description of the men.

Chicago policeman William Johnson testified that on April 2 at about 9:00 p. m., while he was working alone, he spoke with Mrs. Scott at 3820 West Washington Boulevard. She gave him a description of two men. After talking with her, he went to 237 North Pulaski Avenue and arrested defendant Wright and the coindictee Lonnie Lowe. A search disclosed that Lowe had a butcher knife on his person. Johnson handcuffed Wright to Lowe, put them in the rear seat of the car he was driving and took them to 3820 West Washington Boulevard. There Mrs. Scott was asked to look at the two men. When she first saw them she said "[t]hey looked like the men . . . ," and then "[t]hey took the boys out of the car and I saw them, I said, 'They are the man (sic)'." The two men were then taken to the 11th District Police Station where Mrs. Scott viewed Wright in a six-man lineup. A short time later, Officer Walter Zanolewicz with two other officers and Lonnie Lowe went in a squad car to a tavern at 325 South Pulaski Avenue and arrested the defendant Ward. He was brought to the police station where he alone was viewed by Mrs. Scott. Defendants contend that these pretrial identifications were unnecessarily suggestive and conducive of irreparable mistaken identifications in court that denied them a fair trial. Stovall v. Denno, 388 US 293, 18 L Ed2d 1199, 87 S Ct 1967 (1967) ; Palmer v. Peyton, 359 F2d 199 (4th Cir 1966).

██ ██ The practice of one-man "showups" (as was done with Ward) and the handcuffing of an accused for viewing by the victim of a crime (as was done with Wright), where not necessary, has been condemned as being grossly suggestive. Stovall v. Denno, supra; compare People v. Lee, 44 Ill2d 161, 254 NE2d 469. However, whether a pretrial identification of an accused is so sug-

gestive that it results in a courtroom identification that denies due process of law depends on the facts of each case. An in-court identification may be admissible if it is shown, by clear and convincing evidence, that it has an independent origin, arising from an earlier uninfluenced observation of the defendant. People v. Cook, 113 Ill App 2d 231, 252 NE2d 29; People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152. And this is true even though there may have been an intervening suggestive confrontation. People v. McMath, 104 Ill App2d 302, 244 NE2d 330, affirmed 45 Ill2d 33, 256 NE2d 835. Therefore, we must examine the identification evidence and the testimony of Mrs. Jacqueline Scott concerning the crime and the events prior to its occurrence.

At the trial Mrs. Scott identified Ward as one of her assailants. She testified that she saw him alone at the 11th District Police Station the evening of the robbery. During cross-examination, however, she admitted that when she first saw Ward she told the police officers that she was not sure he was one of the men, "[B]ecause he had changed clothes." There is no evidence in the record that Ward changed his clothes between 8:30 p. m. and the time he was viewed at the police station by Mrs. Scott.

█ Further cross-examination compelled Mrs. Scott to admit that seven months after the robbery she signed a written statement in which she said that she could not identify the man who went into her pocket (the man she said was Ward) because he was in the shadows near her door and she could not remember him. Thus, it can be seen that Mrs. Scott's identification of Ward was uncertain. Her written statement made her in-court identification of him doubtful. It thus appears that Mrs. Scott's pretrial identification of Ward was doubtful and uncertain and her in-court identification was inherently tainted with the unfair suggestion of the one-man showup to which Ward was subjected at the police station the

evening of the robbery. Under these circumstances the in-court identification was rendered inadmissible, and Ward's conviction in No. 52951 therefore cannot stand. Foster v. California, 394 US 440, 22 L Ed2d 402, 89 S Ct 1127 (1969) ; People v. Fiorita, 339 Ill 78, 170 NE 690; People v. Martin, 95 Ill App2d 457, 238 NE2d 205.

██ Mrs. Scott's identification of Wright was different. She said it was Wright who put what felt like a butcher knife on her neck. It was Wright who came to the door as she was trying to open it and asked her if that address was "1820." She spoke with Wright and asked him if he was looking for someone in the building. The area was illuminated by streetlights, lights in the hallway and lights from a hospital across the street. With the exception of the man who was in the shadow (the defendant Ward), she was able to see the men who accosted her. She gave the police a description of the men. Officer Johnson corroborated her by testifying that Mrs. Scott gave him the description of two of the men. She described Lonnie Lowe as the "tall one." When Wright was arrested with Lowe, on the latter was found a 12-inch butcher knife. Mrs. Scott testified that when her landlord opened the door, the men "[l]ooked up and saw him and they turned around and walked toward Hamlin." She could not have given this testimony without having looked at the men. In the written statement introduced in evidence by defendants, Mrs. Scott described Wright, his hair, his clothing and his height. Cross-examination did not shake her testimony concerning her identification of this defendant. We believe that these facts, clearly reflected in the record, show a sufficient, independent and uninfluenced origin or source of Wright's courtroom identification by Mrs. Scott. People v. Cook, supra.

██ Nonetheless, it is contended that because the identification evidence against Wright came only from the testimony of Mrs. Scott, and Wright's alibi evidence

was not expressly contradicted, the alibi cannot be discounted and he found guilty. This contention assumes that Wright's alibi evidence was not subject to question. It overlooks the quality of Miss Shirley Wright's testimony that she reached the party, six blocks away from the scene of the crime, at about 8:00 p. m. Wright, she said, got there "around 8:30 or quarter to 9:00." Mrs. Scott testified that the robbery took place at approximately 8:30 in the evening. This alibi evidence did not eliminate the possibility that Wright committed the offense.

The alibi at most, created a conflict between the testimony of Mrs. Scott and that of Wright. The fact that he had an otherwise uncontradicted alibi did not, in and of itself, constitute reasonable doubt of the defendant's guilt. It was the function of the trial judge to resolve conflicts in the testimony, and he was not obliged to believe the defendant's alibi evidence over the positive identification by Mrs. Scott. People v. Setzke, 22 Ill2d 582, 177 NE2d 168; People v. Jackson, 95 Ill App2d 28, 32, 237 NE2d 858. The trial judge, as he had the power to do, disbelieved the alibi evidence and believed the State's witnesses which included Wright's positive identification by Mrs. Scott. People v. Perkins, 17 Ill2d 493, 162 NE2d 385; People v. Pierre, 114 Ill App2d 283, 252 NE2d 706. The evidence the court believed proved Wright guilty beyond a reasonable doubt. Judgment in No. 52,541 is affirmed.

Judgment in No. 52,541 affirmed; judgment in No. 52,951 reversed.

DRUCKER and ENGLISH, JJ., concur.