THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY CARROLL, Defendant-Appellant.

(No. 55246;

First District (2nd Division)—June 5, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Robert M. Gray and James N. Gramenos, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Richard S. Jalovec, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Defendant was charged with robbery. He was tried by a jury, found guilty; and after post-trial motions were overruled, he was sentenced to serve five to fifteen years. In this appeal, based on the following facts, he argues six contentions as grounds for reversal of his conviction.

At about 2:00 A.M. on the morning of July 30, 1969, Johnnie Ruth Reed was returning to her apartment on the 9th floor of 4500 South State Street in Chicago. When she entered the elevator of the building, a man got in with her. Johnnie Reed had observed the man for two or three minutes. He was wearing brown pants, a yellow shirt and carried a brown jacket over his arm. As the elevator started, the man put his hand over Johnnie Reed's mouth, forced her hands behind her back and made a remark suggesting he was going to sexually molest her. A struggle ensued as they rose past the floors. On the 16th, the man pulled Johnnie Reed from the elevator. She continued struggling, bit the man's hand and began to scream. The man took her purse and ran. As he did, he dropped the jacket he was carrying. People on the same floor came out of their apartments. Two young men, Ricardo Douglas and Bruce Peoples, chased the man down the stairs. At either the 13th or 14th floor of the building, the young men found Johnnie Reed's purse. They returned it to her and resumed their pursuit of the man, running down the stairs and out into State Street.

Sergeant Edmund Lord responded to the alarm of a robbery in progress at 4500 South State Street. When he drove up, he met two young men running out of the building. He stopped them. They told Sergeant Lord about the man they were chasing, a man who was then on the east side of the street. Lord arrested the man. It was the defendant, Leroy Carroll. Fifteen minutes after the attack on Johnnie Reed, defendant was brought to the 16th floor of the building where she identified him as her attacker.

Among the policemen who responded to the call of a robbery in progress were Ronald Tillrock and his partner Nicholas Pagliaro. They went to the 16th floor of 4500 South State Street and there, near the elevator, found a jacket. In one pocket, among other personal items, was a ring containing three keys, one larger than the other two. A short time later, defendant was taken to a police station where he was charged with the robbery of Johnnie Ruth Reed.

On August 26, 1969, while defendant was in custody, policemen Tillrock and Pagliaro obtained the ring of keys from the inventory section of the Chicago police department. The officers had learned that defendant lived at 4438 South Wells Street. They went to that address. There they found the name "Carroll" or "Collins" on a door that led to the second floor. Tillrock inserted the large key into the door and it turned the tumbler. He then rang the bell which was answered by a man and a woman. The woman was defendant's sister, Marie Collins who, as a defense witness, testified that defendant lived in her apartment; that he had the large key and that it looked like the one to her front door.

Prior to trial, defendant made four motions: (1) for an order that would have precluded the State from impeaching his testimony with evidence of a prior conviction for rape; (2) for an order suppressing the State's identification evidence on the ground that the circumstances under which he was identified by Johnnie Ruth Reed were unnecessarily suggestive and conducive to an irreparably mistaken identification; (3) for an order suppressing the State's evidence concerning the key and the fact that it turned the tumbler in the lock to the apartment in which he lived; (4) for an order directing the official court reporter to furnish him with a free transcript of the hearing of his motion to suppress evidence. The motions were denied. The case was then presented to the jury and both sides rested. During defendant's summation, he moved for a mistrial on the ground that certain remarks of an assistant State's Attorney prejudiced his rights to a fair trial. The motion was denied. Thereafter, the jury was instructed; and following its deliberation, it returned a verdict that found defendant guilty of robbery.

First, defendant contends that the trial court committed error when it denied his motion to suppress evidence which would have proved that on a prior occasion he had been convicted of rape. Defendant argues that the trial court erred when it failed to recognize it had discretion to suppress evidence of the conviction, one which the State was going to use to impeach him in the event he testified in his own defense. In the alternative, defendant contends that the trial court abused its discretion in failing to suppress evidence of the conviction. Defendant argues that because he feared impeachment, denial of his motion enabled the prosecution to intimidate him into not testifying in his defense. To support his contention, defendant relies on *People v. Montgomery*, 47 Ill.2d 510, 268 N.E.2d 695, a January 1971 decision in which our Supreme Court held that evidence of a prior conviction should not be permitted for purposes of impeachment if a period of more than 10 years has elapsed since the conviction or since release of the witness from confinement, whichever is the later date.

■■ *Montgomery*, however, applies only to cases tried after that decision. (*People v. Lowery*, 1 Ill.App.3d 851, 275 N.E.2d 185; *People v. Hyde*, 1 Ill.App.3d 831, 275 N.E.2d 239.) This case was tried before *Montgomery*. It follows that the holding of that case is not applicable to this one. (*People v. Beck*, 133 Ill.App.2d 356, 273 N.E.2d 169.) Therefore, the trial court did not commit error when it denied the motion to suppress evidence of defendant's prior rape conviction. *People v. Rossi*, 52 Ill.2d 13, 284 N.E.2d 275; compare *People v. Jackson*, 132 Ill.App.2d 464, 270 N.E.2d 498.

Second, defendant contends that the trial court committed error when it denied his motion to suppress the State's identification evidence. He

argues that his two identification confrontations with Johnnie Reed: one, while he was handcuffed and standing between two uniformed policemen; the other, while he was handcuffed and seated alone on a bench in a police station, were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. Defendant maintains that these confrontations affected Johnnie Reed's in-court identification testimony; therefore, his motion to suppress the State's identification evidence should have been sustained. In support of this contention, defendant relies on *Stovall v. Denno* (1967), 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967, and a number of Illinois decisions.

■■ We think it is obvious that defendant was subjected to identification confrontations which were unnecessarily suggestive and conducive to irreparable mistaken identification. The exhibition of a crime suspect, in handcuffs, to a crime victim injects an undue degree of suggestability into an identification confrontation. (*People v. Lee*, 44 Ill.2d 161, 254 N.E.2d 469; *People v. Wright*, 126 Ill.App.2d 91, 261 N.E.2d 445.) When a handcuffed crime suspect, standing between two uniformed policemen, is exhibited to a crime victim for identification, few human beings are capable of resisting the suggestion that what they are being told is: "This is the man!" In the case before us, the first suggestive confrontation was compounded when defendant was viewed by Johnnie Reed in a police station where he was still handcuffed and sitting alone on a bench. Therefore, unless the State, by clear and convincing evidence, has shown that Johnnie Reed's in-court identification of defendant had a source independent of the confrontations, her identification testimony should have been suppressed. (*People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152; *Clemons v. United States* (D.C. Cir. 1968); 408 F.2d 1230; *State v. Thompson* (1971), 59 N.J. 396, 283 A.2d 513.) It is settled that even though an identification confrontation is improper or has been suppressed, an in-court identification is nevertheless admissible if it is based on a prior independent origin, one arising from an earlier uninfluenced observation of the suspect. *People v. Spencer*, 7 Ill.App.3d 1017, 288 N.E.2d 612; *People v. Hill*, 3 Ill.App.3d 694, 279 N.E.2d 497 (abstr.); *People v. Wright*, 126 Ill.App.2d 91, 261 N.E.2d 445.

■■ In this case, clear and convincing evidence shows that at about 2:00 A.M. on July 30, 1969 Johnnie Reed was followed into her apartment building by a man. She observed him for about two or three minutes. She was in the elevator with him from the 1st to the 16th floor. When he ran past her after taking her purse she had another opportunity to see him. Without hesitation, she testified that the man was wearing brown pants, yellow shirt and was carrying a brown jacket over his arm.

Significantly, in support of his motion to suppress evidence, defendant testified that he was wearing "* * * brown pants with yellow pin-stripe and beige shirt, short sleeve shirt." True, under cross-examination, Johnnie Reed admitted that she could not recall if the man had a mustache, nor could she remember his particular hair style or his weight. She testified, and under strenuous cross-examination persisted, that she remembered his clothing and his face. We conclude that her in-court identification testimony was of independent origin, one arising from an uninfluenced observation of the defendant. (See *People v. McMath,* 104 Ill.App.2d 302, 244 N.E.2d 330, *aff'd,* 45 Ill.2d 33, 256 N.E.2d 835.) Therefore, the trial court did not commit error when it denied defendant's motion to suppress the State's identification evidence.

Third, defendant contends that the trial court committed error when it denied his motion to suppress evidence. Defendant argues that insertion by Officer Tillrock of the key into the lock of the door to the second-floor apartment at 4438 South Wells Street was either an unconstitutional search and seizure or the obtaining of evidence that was the fruit of illegal police activity. Defendant claims that Tillrock's conduct was an illegal search of a dwelling place without a warrant, one that violated defendant's rights under the fourth amendment to the United States constitution and section 6 of article II, constitution of Illinois. Therefore, defendant insists, Officer Tillrock's testimony concerning the key and its turning of the tumbler should have been kept from the jury.

■■ A "search" is a probing or exploration for something that is concealed or hidden from the searcher. A "seizure" is a forcible or secretive dispossession of something against the will of the possessor-owner, both terms connoting hostility between the searcher and the person whose property or possessions are being searched or sought. (*United States v. Haden* (7th Cir. 1968), 397 F.2d 460, *cert. denied,* 396 U.S. 1027, 24 L.Ed.2d 523, 90 S.Ct. 574; *People v. Holt,* 7 Ill.App.3d 646, 288 N.E.2d 245; 79 C.J.S. Searches and Seizures § 1). A search is an invasion, a quest with some sort of force, either actual or constructive. (*People v. Marvin,* 358 Ill. 426, 428, 193 N.E. 202; *People v. Woods,* 26 Ill.2d 557, 188 N.E.2d 1; *City of Decatur v. Kushmer,* 43 Ill.2d 334, 253 N.E.2d 425.) In contrast, the obtaining of information or evidence by officers who are where they have a right to be, with a legitimate reason, is not a search. See *United States v. Graham* (6th Cir. 1968), 391 F.2d 439; *United States v. Johnson* (5th Cir. 1969), 413 F.2d 1396; *United States v. Gunn* (5th Cir. 1970), 428 F.2d 1057; *United States v. Williams* (5th Cir. 1970), 434 F.2d 681.

■■ The record discloses that the key in officer Tillrock's possession

was found in a jacket at the scene of the crime. Therefore, Tillrock's possession of the key was lawful. The door in question was accessible from a common hallway on the ground floor of the building. A police officer who is in the common hallway of a building is not in a constitutionally protected area. (See *City of Evanston v. Hopkins*, 330 Ill.App. 337, 71 N.E.2d 209 (abstr.); *People v. Varnadoe*, 54 Ill.App.2d 443, 203 N.E.2d 781.) All that Tillrock did was insert the key into the lock and turn the tumbler. Then, without any intrusion or trespassory conduct, he rang the bell that was answered by two persons, one of them defendant's sister. This was not a search. (See *Muegel v. State* (Ind. 1971), 272 N.E.2d 617; compare *State v. Turner* (1966), 101 Ariz. 85, 416 P.2d 409.) Nor can it be said that the evidence obtained was the "fruit" of illegal activity. Illegal activity, in this context, means activity that violates some constitutional right personal to a defendant. (*State v. Delaire* (1969), 127 Vt. 462, 252 A.2d 531.) No constitutional right, personal to the defendant, was violated when Officer Tillrock merely inserted the key and learned that the tumbler could be turned by it.

It would have been a different case had the key been obtained in violation of some constitutional right of the defendant. (See *People v. McDonald*, 51 Ill.App.2d 316, 200 N.E.2d 369.) Certainly, it would have been a different case if, while defendant was in custody, the two officers, using the key, had entered his apartment and searched it. (See *People v. Grod*, 385 Ill. 584, 53 N.E.2d 591; *People v. Kalpak*, 10 Ill.2d 411, 140 N.E.2d 726.) Nothing like this was done here. Of course, the mere fact that a police officer has lawful possession of a citizen's key does not confer an unlimited license to use it. However, the legitimate interests of proper crime investigation allow what was done in this case. Therefore, the trial court did not commit error when it denied defendant's motion to suppress evidence.

Fourth, defendant contends that he was deprived of equal protection of the laws when the trial court denied his motion for a free transcript of the testimony that Johnnie Ruth Reed and Sergeant Edmund Lord gave at the hearing of the motion to suppress evidence. Without showing in what important respect this is true, defendant argues that the first testimony of these two witnesses varied from the second which they gave before the jury. He points to the fact that when he requested the free transcript, he proved his indigency. Therefore, he insists it was error for the trial court to deny his motion for the transcript.

■■ Our law recognizes that in criminal proceedings differences in access to instruments needed to vindicate legal rights, when based on the financial situation of a defendant, are repugnant to the constitution of the United States. (*Roberts v. LaVallee* (1967), 389 U.S. 40 19

L.Ed.2d 41, 88 S.Ct. 194.) Accordingly, the highest court of this State has held that denial to a defendant of a free transcript of the preliminary hearing on his case, one at which the complainant testified, deprives him of equal protection of the laws. (*People v. Moore*, 51 Ill.2d 79, 281 N.E.2d 294.) In some jurisdictions, the right to a free transcript extends to the record of pretrial suppression of evidence. See *People v. Ballott* (1967), 20 N.Y. 2d 600, 233 N.E.2d 103; *People v. Montgomery* (1966), 18 N.Y. 2d 993, 224 N.E.2d 730.

■■■■ However, not every refusal of a free transcript denies equal protection of the laws to an indigent defendant. (*United States ex rel. Cadogan v. LaVallee* (2d Cir. 1970), 428 F.2d 165, 167.) A defendant who requests but is denied a free transcript has the obligation of showing that he was prejudiced by that denial. (*People v. Gill*, 7 Ill.App.3d 24, 286 N.E.2d 516; compare *United States ex rel. Caster v. Mancusi* (2d Cir. 1969), 414 F.2d 743.) An indigent defendant does not have a constitutional right to any transcript he requests; the transcript must be an instrument he needs to vindicate a legal right. *United States v. Carella* (2d Cir. 1969), 411 F.2d 729.

■■ Our examination of the record convinces us that the free transcript defendant requested was not needed by him to vindicate any legal right. The two witnesses about whom he was concerned had not yet testified. When defendant requested the transcript, he did not need it. In fact, defendant does not now point to any material discrepancy in the testimony of the two witnesses. Therefore, defendant was not deprived of equal protection of the laws when the trial court denied his request for the free transcript. *People v. Lewis*, 92 Ill.App.2d 463, 236 N.E.2d 417.

■■■ Fifth, defendant contends that he was denied a fair trial by the conduct of an attorney for the prosecution. To support this contention, defendant points to six incidents which he claims show that the prosecution abandoned all concepts of fundamental fairness and sought to secure his conviction at any cost. We have examined these incidents; and although certain remarks of the attorney in question were improper and unprofessional, we conclude that the incidents did not interfere with defendant's right to a fair trial. (See *United States v. Holmes* (7 Cir. 1971), 452 F.2d 249; compare *People v. Eubank*, 46 Ill.2d 383, 263 N.E.2d 869, *cert. denied*, 402 U.S. 972, 29 L.Ed.2d 136, 91 S.Ct. 1657; *People v. Porterfield*, 131 Ill.App.2d 167, 268 N.E.2d 537.) It is a general rule that remarks, argument and conduct of counsel, even though improper, are not grounds for reversal of a conviction unless they cause substantial prejudice to the accused. (*People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432, *cert. denied*, 398 U.S. 954, 26 L.Ed.2d 296, 90 S.Ct.

1881; *People v. Phillips*, 126 Ill.App.2d 179, 261 N.E.2d 469.) Defendant's objections to the prosecutor's remarks were promptly sustained by the trial court. Moreover, the trial judge, firmly and with fairness, gave the jury appropriate and effective admonitions. Under these circumstances, it is our judgment that the incidents did not prejudicially influence the jury. (*People v. Hines*, 30 Ill.2d 152, 157, 195 N.E.2d 712; *People v. Bravos*, 114 Ill.App.2d 298, 252 N.E.2d 776.) Therefore, defendant was not denied a fair trial by the conduct of one of the attorneys for the prosecution.

Sixth, defendant contends that his conviction was based on an identification so doubtful, vague and uncertain that there is reasonable doubt he is the man who attacked and robbed Johnnie Ruth Reed during the early morning hours of July 30, 1969. Defendant argues that Johnnie Reed was ill, a condition that affected her ability to identify her attacker. Moreover, the first identification confrontation between them occurred in an atmosphere of chaotic commotion and confusion. For example, defendant points to Johnnie Reed's admission that for a time she was not able to see her attacker because he was behind her when he began the assault. Defendant also points out that Johnnie Reed admitted she did not remember whether her attacker had a mustache, what was the style of his hair or whether he was wearing a ring. To buttress his argument, defendant cites three decisions of this court: *People v. Kincy*, 72 Ill.App.2d 419, 219 N.E.2d 662; *People v. Marshall*, 74 Ill.App.2d 483, 221 N.E.2d 133; and *People v. Martin*, 95 Ill.App.2d 457, 238 N.E.2d 205.

In our judgment, those decisions do not support defendant's argument. *Kincy*, *Marshall* and *Martin*, unlike the one before us, were cases in which the State had only one identification witness. The record of this case shows that Ricardo Douglas, one of the two young men who chased Johnnie Reed's attacker out of 4500 South State Street, positively and without hesitation identified defendant as that man. Douglas also testified that between two and ten minutes before they heard Johnnie Reed scream, he and his companion, Bruce Peoples, saw defendant on the 15th floor of the building. Defendant's characterization of Johnnie Reed's identification evidence overlooks the details of her testimony: she looked back twice and saw the man following her into the building; she observed the man for two or three minutes at the elevator; on the 16th floor, she had another opportunity to see and observe him when he ran past her in the attempt to escape; she gave a description of the man's clothing, a description that matched defendant's testimony of what he was wearing the morning in question,

Johnnie Reed was positive in her in-court identification of the defendant and in her insistence that she remembered his clothing and

his face. Where identification testimony of a crime victim is positive, precise accuracy in describing facial characteristics of a defendant is unnecessary. (*People v. Hill,* 3 Ill.App.3d 694, 279 N.E.2d 497.) Slight discrepancies in the testimony of an eye-witness do not destroy his credibility. (*People v. Willis,* 126 Ill.App.2d 348, 354, 261 N.E.2d 723.) And the failure of an eye-witness to notice the presence or absence of a mustache, or other physical features or characteristics of a crime suspect, is a minor discrepancy. *People v. Luckey,* 126 Ill.App.2d 15, 28, 261 N.E.2d 449; *People v. Howard,* 112 Ill.App.2d 167, 251 N.E.2d 369; *People v. Ford,* 89 Ill.App.2d 69, 233 N.E.2d 51.

■■ Defendant's in-court identification by Johnnie Reed must be considered in the light of Ricardo Douglas's identification testimony and that of Officer Tillrock concerning the key that was found at the scene of the crime, the key which defendant's sister testified belonged to him. When this is done, the conclusion is inescapeable that defendant's conviction was based on a positive and certain identification, one which proved that he was the man who attacked and robbed Johnnie Ruth Reed in the early morning hours of July 30, 1969. The judgment is affirmed.

Affirmed.

STAMOS, P. J., and SCHWARTZ, J., concur.