THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLYDE GUNN, Defendant-Appellant.

(No. 54595;

First District (2nd Division)—December 4, 1973.

James J. Doherty, Public Defender, of Chicago (Shelvin Singer, Assistant Public Defender, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago (Elmer C. Kissane and James Truschke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Defendant Clyde Gunn, and a Gregory Taylor, were charged with armed robbery. After a separate jury trial, Gunn was found guilty and the court sentenced him to serve 5 to 15 years. In this appeal, defendant does not question the evidence that convicted him. Instead, from testimony of the State's identification witnesses and from circumstances surrounding a confession, he presents three issues.

*First.* Whether he was denied due process of law by the identification confrontation he had with the victim of the crime.

At about 12:50 A.M. on June 23, 1967 in the City of Chicago, a woman was attacked by two men and robbed near her home. The incident took ten or more minutes; and during that time, the woman observed that one man was taller than the other. The taller man was armed with a sawed-off shotgun; the shorter man, with a pistol. The man with the shotgun hit her with it and the man with the pistol put it at her head, fired three times but the gun misfired. The police were  called; and later, accompanied by the woman, they searched the neighborhood and arrested the man with the shotgun. He was Gregory Taylor. Later that morning, the woman saw defendant near her home. She called the police; and shortly

thereafter he was brought in a police vehicle to her, and she identified him as one of the men who had robbed her.

On the day of his trial, defendant's counsel informed the court that the defense was ready for the hearing of a previously filed motion to suppress the State's identification evidence. Defendant, however, interrupted and told the court that he was not ready to proceed either with his motion or with his trial. After an exchange which required the court to caution defendant concerning his conduct, the trial judge ruled that the case, having been previously set, would go to trial before the jury. The assistant state's attorney prosecuting the case then suggested that defendant's motion be heard at the same time that the State's case-in-chief was to be presented. Defendant's counsel agreed to the suggestion. Thereafter, the complaining woman and a police officer testified for the prosecution. Defendant, as the only witness for the defense, testified that on the occasion in question, he was arrested near his home, handcuffed, placed in a police vehicle and taken to the complaining woman who was asked by investigating policemen to identify him. It was this identification confrontation and the woman's later in-court identification testimony that defendant contends denied him due process of law.

■■ It is generally recognized that "[t]he exhibition of a crime suspect, in handcuffs, to a crime victim injects an undue degree of suggestibility into an identification confrontation." (*People v. Carroll*, 12 Ill. App.3d 869, 874, 299 N.E.2d 134; see *People v. Lee*, 44 Ill.2d 161, 254 N.E.2d 469; compare *People v. Wright*, 126 Ill.App.2d 91, 261 N.E.2d 445.) However, it is also recognized that legal or constitutional questions do not arise when one suspected of a crime is identified by a person who has previously known him and the in-court identification testimony of that person is independent of and uninfluenced by the pretrial confrontation. *People v. Davis*, 45 Ill.2d 514, 517, 261 N.E.2d 314; compare *People v. Hutchins*, 9 Ill.App.3d 447, 292 N.E.2d 494.

■■ In this case, the complaining woman testified that she knew defendant and that he lived about a block from her home. The woman's home was at 4502 South Wells; and defendant, according to his testimony, lived at 4462 South Wentworth Avenue. We take judicial notice that in the City of Chicago, these two addresses are, as the woman testified, about a block apart. Moreover, when he was cross-examined, defendant was asked if he knew the woman who had identified him. He said he did; and he recalled that when he was arrested, the police vehicle took him close to her house. When his counsel subjected him to further direct examination, defendant was not asked to explain the answers he gave under cross-examination. Furthermore, the complaining woman described Gregory Taylor as the taller of the two men who

robbed her and the defendant as the shorter man armed with a pistol. In this respect, defendant corroborated the woman when he told the police, first orally and later in a written confession, that when they robbed her, Gregory Taylor was armed with a shotgun and he was armed with a pistol. Therefore, it appears that the victim of the robbery was acquainted with the defendant, recognized him, distinguished him from his accomplice and positively identified him in court. Her acquaintance with him, prior to the crime, is a factor we must consider in determining whether her identification had an independent origin. *People v. Farrar*, 7 Ill.App.3d 312, 314, 287 N.E.2d 475.) We must weigh this factor against evidence which includes testimony by the woman that when she was robbed, the two men were in her presence approximately ten minutes; that she had an opportunity to observe them, distinguish defendant from his companion, and recognize him later when she saw him walking down a street. Under these circumstances, we conclude that the complaining woman's in-court identification was of an independent origin and uninfluenced by the pretrial confrontation about which complaint is made. Therefore, defendant was not denied due process of law by the identification confrontation he had with the victim of the crime. *People v. Robinson*, 42 Ill.2d 371, 247 N.E.2d 898.

*Second.* Whether defendant was adequately admonished concerning his constitutional rights before he waived advice of counsel and made the confession that was admitted in evidence against him.

Prior to his trial, and by a motion he prepared, defendant moved to suppress any and all statements, admissions and confessions made by him while he was in custody. At the hearing of the motion, the State called the police officer who arrested defendant, two police officers who interrogated him, an assistant state's attorney to whom defendant gave a 21-page initialed confession and the court reporter who took down defendant's confession and made a polaroid photograph of him during interrogation in the offices of the state's attorney of Cook County. The two officers, the assistant state's attorney and the court reporter testified that before defendant was questioned, he was advised that he had the right to remain silent; that anything he said would be used against him; that he had the right to have an attorney present before and during questioning; and that if he could not afford an attorney, one would be provided him by the State. According to the assistant state's attorney, defendant was asked if he understood the rights explained to him, he said he did; he was asked if he wanted an attorney present, he said he did not.

When defendant testified, however, he first denied that he was informed of his constitutional rights; later, in his direct examination, he said he was told that any statement he made would be used against him;

that he had the right to have a lawyer present and consult with one; and that if he could not afford one, a lawyer would be provided him. Defendant said that he requested an attorney, but one was not furnished him.

■■ The testimony of the officers, the assistant state's attorney and that of the court reporter, was admissible to prove that prior to his making the incriminating oral statements and his giving and signing the written confession, defendant was informed of his right to silence, to the advice of counsel and his right to have the State furnish him counsel if he could not afford one. (See *People v. Scott*, 52 Ill.2d 432, 440, 288 N.E.2d 478.) Defendant's testimony, to the extent that it contradicted the State's witnesses, created a conflict in the evidence. Resolution of this conflict by determining the credibility and the weight to be given the testimony of the witnesses, was a matter that was left to the trial court. (*People v. Young*, 131 Ill.App.2d 113, 266 N.E.2d 160; *People v. Noonan*, 5 Ill.App. 3d 1109, 284 N.E.2d 446.) And in deciding whether the evidence, though conflicting, proved that defendant's oral statements and written confession were voluntary, the trial court did not have to be convinced beyond a reasonable doubt. (*People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601.) Its findings will not be disturbed by us unless they are contrary to the manifest weight of the evidence. *People v. Higgins*, 50 Ill.2d 221, 278 N.E.2d 68.

■ In our judgment, the trial court's findings concerning the confession are adequately supported by evidence which consists of testimony of State witnesses, that of defendant and recorded answers he made in his written confession, all indicating that he was advised of his right to remain silent, his right to counsel, and his right to have one furnished him by the State if he could not afford one. The evidence shows that being advised of these rights, defendant freely answered questions that were asked of him. The free answering of questions by a person in custody, after explanation of his rights, is a circumstance that rebuts the normal presumption against waiver of constitutional rights. (*People v. Long*, 119 Ill.App.2d 75, 255 N.E.2d 491.) Therefore, we conclude that defendant was adequately admonished concerning his constitutional rights before he waived counsel and made the confession that was admitted in evidence against him. The trial court ruled correctly when it denied defendant's motion to suppress. *People v. Bey*, 45 Ill.2d 535, 259 N.E.2d 800; *People v. Schutz*, 8 Ill.App.3d 827, 291 N.E.2d 194; *People v. McCottrell*, 117 Ill.App.2d 1, 254 N.E.2d 284; *People v. Smith*, 108 Ill. App.2d 172, 246 N.E.2d 689.

*Third.* Whether evidence in this record shows that investigating police officers used psychological coercion to elicit oral statements and a written confession from defendant while he was unrepresented by counsel.

■■ It is well established that to vitiate a confession, coercion may be mental as well as physical. (*Garrity v. New Jersey* (1967), 385 U.S. 493, 496, 17 L.Ed.2d 562, 87 S.Ct. 616; *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466.) Subtle pressures on a person in custody can be as telling as coarse and vulgar ones. In a case like this one, the essential question is whether the person subjected to interrogation was deprived of his free choice to admit, deny or refuse to answer. *Lisenba v. California* (1941), 314 U.S. 219, 86 L.Ed. 166, 62 S.Ct. 280.

In apparent reliance on these principles, defendant contends that in violation of his right to silence, investigating officers used psychological coercion to elicit from him oral statements and a written confession. He supports this contention by referring to his testimony in which he related that in a police station, prior to the statements and the confession, a police officer urged him to "* * * make a statement because they got me and that it wouldn't be very hard on me because I wasn't actually the one * * *." Defendant argues that this urging was psychological coercion because he was a 17 year old boy with no prior felony experience, one to whom it was not explained that, as an accountable person, he could be guilty of a crime even though he was not the perpetrator.

■■ We do not agree with defendant's contention. The words of the police officer, as described by defendant, did not constitute coercion. (Compare *People v. Weinstein*, 46 Ill.2d 222, 263 N.E.2d 62; *People v. Davis*, 412 Ill. 391, 107 N.E.2d 607.) With regard to what was explained to defendant, the State concedes that during his interrogation, no one explained to him the principles of criminal accountability. In our judgment, this kind of indoctrination is not to be expected of prosecuting authorities. It is enough that the person in custody is given meaningful advice, spoken in a way the unlettered and unlearned can grasp and in language which he can comprehend and on which he can act. *People v. Baker*, 9 Ill.App.3d 654, 660, 292 N.E.2d 760.

This much was done in this case; and, as the trial court found, defendant's oral statements and written confession were freely given. Therefore, we conclude that the evidence in this record does not show that investigating officers used psychological coercion to elicit oral statements and a written confession from defendant while he was unrepresented by counsel. The judgment is affirmed.

Affirmed.

HAYES and DOWNING, JJ., concur.